GREGORY A. KASPER
kasperg@sec.gov
STEPHEN C. MCKENNA (*pro hac vice* application forthcoming)
mckennas@sec.gov
KENNETH E. STALZER (*pro hac vice* application forthcoming)
stalzerk@sec.gov
SECURITIES AND EXCHANGE COMMISSION
1961 Stout Street, 17th Floor
Denver, Colorado 80294
(303) 844-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>- against -<br><br>MARTIN ADRIAN RUIZ, RAM FUND, LP, and CARTER BAIN WEALTH MANAGEMENT, LLC,<br><br>Defendants, and<br><br>ROTHSCHILD MAGNUS FUND, LP, ISG CAPITAL LLC, and MISTER FARMS, LLC,<br><br>Relief Defendants. | 21-cv-_____<br>**ECF CASE**<br><br>**FILED UNDER SEAL**<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, United States Securities and Exchange Commission ("SEC"), for its Complaint against defendants Martin Adrian Ruiz ("Ruiz"), RAM Fund, LP ("RAM"), and Carter Bain Wealth Management, LLC ("CBWM") (collectively, the "Defendants"), and relief defendants Rothschild Magnus Fund, LP ("RMF"), ISG Capital LLC ("ISG"), and Mister Farms, LLC ("Mister Farms") (collectively, the "Relief Defendants"), alleges:

## SUMMARY OF ALLEGATIONS

1.      The SEC brings this emergency enforcement action to stop an ongoing fraud and misappropriation of funds by investment adviser Martin A. Ruiz.

2.      Ruiz induced investors, many, if not all, of whom are advisory clients of the advisory firm he owns and controls, CBWM, to invest at least $10.6 million in RAM, an entity that he also owns and controls. Ruiz represented to prospective investors that their funds would be used to acquire real estate and to make commercial loans. However, RAM did not use the funds for these purposes. Instead, Ruiz misappropriated the vast majority of the RAM investor funds by transferring those funds to three other entities he owns and controls – the Relief Defendants RMF, ISG, and Mister Farms. Ruiz then spent investors' funds on lavish personal expenses, including, among other things, paying for his residences in Manhattan and Santa Fe, and millions of dollars in credit cards bills.

3.      Ruiz concealed his misappropriation by making Ponzi-like payments to some investors and providing investors with false valuations concerning their RAM investments.

4.      By engaging in this conduct, Defendants Ruiz, RAM, and CBWM, violated Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and (3)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)]. Defendants Ruiz and RAM also violated Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)]. Defendants Ruiz and CBWM further violated Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]. Unless restrained and enjoined, Defendants will continue to violate the federal securities laws.

2

5.      Relief Defendants RMF, ISG, and Mister Farms have each received illicit proceeds from the fraud of the Defendants to which they have no legitimate claim and under circumstances in which it is not just, equitable, or conscionable for them to retain the funds or assets.

## JURISDICTION AND VENUE

6.      The SEC brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. § 80b-9(d)]. The SEC seeks preliminary and permanent injunctions against the each of the Defendants, enjoining them from future violations of the statutes and regulations referenced above, disgorgement of all ill-gotten gains from activity set forth in this Complaint, jointly and severally, together with prejudgment interest, and civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]. The SEC also seeks disgorgement of ill-gotten gains from Relief Defendants. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d)(1), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d)(1), and 77v(a)], Sections 21(d) and 27(a) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa(a)], and Sections 209(d) and 214(a) of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14(a)].

7.      In connection with the conduct alleged in this Complaint, Defendants, directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, the means and instruments of transportation or communication in interstate

3

commerce, or the mails, including obtaining funds from investors through wire transfers in interstate commerce.

8. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. §§ 77v(a)], Section 27(a) of the Exchange Act [15 U.S.C. §§ 78aa(a)], and Section 214(a) of the Advisers Act [15 U.S.C. §§ 80b-14(a)]. Defendant Ruiz, who solely controls each of the other Defendants and Relief Defendants, resides in this District. As such, many of the acts, practices, transactions, and courses of business including, but not limited to, wire transfers, alleged in this Complaint occurred in this District.

## DEFENDANTS

9. **Martin Adrian Ruiz**, age 45, is a resident of New York, New York. Ruiz is president and sole owner of CBWM, and is registered as an investment adviser representative in New Mexico and Texas.

10. **RAM Fund, LP ("RAM")** is a Nevada limited partnership with its principal place of business in Las Vegas, Nevada. RAM is controlled by Ruiz, who is its sole general partner. Neither RAM nor its securities are registered with the SEC.

11. **Carter Bain Wealth Management, LLC ("CBWM")** is a Nevada limited liability company with its principal place of business in Las Cruces, New Mexico, and an additional office in Deming, New Mexico. CBWM is an investment adviser registered with the states of New Mexico and Texas. CBWM has approximately $61.6 million of assets under management in advisory client accounts. CBWM, and thus Ruiz, have discretionary authority over all of these funds.

**RELIEF DEFENDANTS**

12.     **Rothschild Magnus Fund, LP** is a Nevada limited partnership with its principal place of business in Las Vegas, Nevada. RMF is solely owned and controlled by Ruiz.

13.     **ISG Capital LLC** is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. ISG is solely owned and controlled by Ruiz.

14.     **Mister Farms, LLC** is a New Mexico limited liability company with its principal place of business in Deming, New Mexico. Mister Farms is solely owned and controlled by Ruiz and purports to be in the business of acquiring and improving commercial farm land.

**FACTS**

**I.      Ruiz Raised Money for RAM from CBWM Advisory Clients.**

15.     From March 2011 to the present (the "Relevant Period"), Ruiz solicited money from, and offered and sold securities, in the form of RAM limited partnership units ("LP Units"), to investors. Most, if not all, of these investors were CBWM clients.

16.     Ruiz used his control over CBWM to target certain advisory clients, many of whom are elderly, and convince them to invest in RAM. A large number of the investors reside in or near Deming, New Mexico, a small community where Ruiz was raised and still has family.

17.     Many of the RAM investors provided their investment funds to RAM pursuant to a subscription agreement with RAM (the "Subscription Agreement"), which Ruiz signed on behalf of RAM.

18.     The Subscription Agreement indicates that the RAM investors received a private placement memorandum ("PPM") and a copy of the RAM limited partnership agreement ("LPA") in connection with the RAM offering.

19.     Through his solicitation efforts and his recommendations to his advisory clients at CBWM during the Relevant Period, Ruiz raised at least $10.6 million for RAM from at least 56 investors.

## II.     Ruiz Misappropriated Investor Money.

20.     Defendants directed RAM investors to purchase LP Units by sending a check or making a wire transfer to RAM's bank accounts. RAM investors' money was received by and pooled in RAM bank accounts.

21.     Ruiz, the sole general partner of RAM, exercised all management authority over RAM, including having sole authority over RAM's bank accounts.

22.     Defendants represented to investors that investor money sent to RAM in exchange for LP Units would be used by RAM for investment purposes, such as the acquisition of real estate and for RAM to make commercial loans.

23.     Instead of using investor money as represented, during the Relevant Period, Ruiz, using his sole control over RAM's bank accounts, misused and misappropriated the vast majority of investor funds. Below is a graphic illustration of the flow of money:



24.     During the Relevant Period, Ruiz transferred approximately $9.2 million of the $10.6 million raised to the Relief Defendants – RFM, ISG, and Mister Farms. Then, as set forth in the chart above, in a waterfall fashion, Ruiz used his sole control over the Relief Defendants and their bank accounts to make a variety of payments that personally benefited him.

25.     For example, Ruiz made over $3 million in payments to various credit cards.

26.     Ruiz also used RAM investors' money for numerous other personal expenses, including: (1) withdrawing over $1.5 million in cash; (2) paying nearly $1.3 million to Ruiz's farming business, Mister Farms; (3) paying over $300,000 for his leased residence in Manhattan; (4) using at least $248,000 for a down payment and mortgage payments on a second residence in

Santa Fe, New Mexico; and (5) using nearly $157,000 for student loan payments and other school-related expenses.

27.     During the Relevant Period, Ruiz also used new investor funds he raised for RAM to make approximately $1.4 million in Ponzi-like payments to some of the existing investors, thus creating the illusion that RAM was a profitable enterprise, though its bank accounts show no income from real estate, lending activity, or otherwise.

## III.   In Connection with the RAM Offering, the Defendants Made Material Misstatements and Omissions Regarding RAM's Use of and Ruiz's Misappropriation of Investor Funds.

28.     In raising funds from investors in connection with the RAM offering, Defendants made material misstatements and omissions regarding, among other things, the use of investor funds.

29.     Throughout the Relevant Period, Defendants represented to prospective RAM investors that their funds would be used for investment purposes, such as the acquisition of real estate and to make commercial loans. For example, Ruiz told one RAM investor that "Carter Bain would manage my retirement savings in safe investments."

30.     These statements regarding the use of RAM investment proceeds were false and misleading because investments in RAM were not placed into "safe" investments or used to acquire real estate or make commercial loans.

31.     The statements regarding the use of proceeds of the RAM investments were false and misleading when made, and Ruiz knew or was reckless in not knowing, and should have known, that the purported use of proceeds described to investors was false and misleading given his control over the bank accounts of RAM and the Relief Defendants, and given his knowledge

that the RAM investors' funds were not being used to acquire real estate or to make commercial loans, but instead were being misappropriated throughout the Relevant Period.

32.      Defendants omitted to state material facts that were necessary to render their statement regarding the intended use of proceeds not misleading. These omissions include that Ruiz intended to divert RAM investors' money to Relief Defendants he controlled, to make Ponzi-like payments to other investors, and to misappropriate millions of dollars for his personal benefit.

33.      Each of the misstatements and omissions described herein are material, as they substantially altered the mix of information presented to the RAM investors by touching upon key aspects of the investment, including the use of offering proceeds. An investor would consider it important that Ruiz, RAM's sole manager and the investment adviser to many, if not all, RAM investors, was misappropriating investor funds for his personal use and making Ponzi-like payments to other investors rather than using investor funds as represented.

34.      As alleged above, and below in Section V with respect to lulling behavior, Ruiz acted with scienter. As the sole control person for RAM and CBWM, Ruiz's scienter is imputed to those Defendants.

35.      The misstatements and omissions detailed above were made in connection with the offer, purchase, or sale of securities – namely the LP Units issued by RAM.

## IV.    Ruiz Made Misstatements and Omissions and Acted On Behalf of RAM and CBWM.

36.      Ruiz made or directed each misstatement and omission detailed above.

37.     Ruiz determined the content of and had ultimate authority over any written materials used to solicit prospective RAM investors, such as the Subscription Agreement.

38.     Ruiz made oral representations to investors in connection with the RAM offering. For example, Ruiz told at least one investor that his investment in RAM would be "safe."

39.     Ruiz's representations to prospective RAM investors regarding, among other things, the intended use of offering proceeds, whether written or oral, are attributable to RAM and CBWM as Ruiz had authority to make such representations on behalf of RAM and CBWM.

40.     Defendants RAM and Ruiz (through his misappropriation of RAM funds) obtained money by means of the material misstatements and omissions detailed above.

## V.     The Defendants Engaged in Deceptive Conduct to Defraud Investors.

41.     During the Relevant Period, Defendants engaged in deceptive conduct to defraud the RAM investors, and engaged in numerous acts, practices, or courses of business that defrauded the RAM investors. In addition to the material misrepresentations and omissions, which are fraudulent and deceptive conduct, Defendants engaged in numerous additional instances of conduct that acted as a fraud and deceit on investors. In engaging in the fraudulent and deceptive conduct Ruiz, as alleged below, acted as an agent of RAM and CBWM and his conduct is imputed to both. Defendants' acted knowingly or recklessly, and negligently, in engaging in the fraudulent and deceptive conduct described below.

Ruiz, through RAM, Made Ponzi-Like Payments with Investor Money.

42.     As noted in the chart set forth in Paragraph 23, Ruiz, through RAM, made approximately $1.4 million in Ponzi-like payments to existing investors seeking return of their investments during the Relevant Period.

43.     At the time Ruiz, through RAM, made various payments to existing investors, RAM had no income and often did not have sufficient assets from sources other than new investor money to make the payments.

44.     Ruiz, and thus RAM, knew or were reckless in not knowing, and should have known, that by making Ponzi-like payments to investors, they were engaging in fraudulent and deceptive conduct. Ruiz had full knowledge of and control over RAM's bank accounts and knew RAM did not have sufficient assets from sources other than new investor money to make payments to investors seeking return of their investments.

Defendants Raised Funds from Investors that Ruiz Misappropriated for Personal Use.

45.     Defendants represented to investors that funds sent to RAM would be used for investment purposes, such as the acquisition of real estate and to make commercial loans, but Ruiz, through RAM, transferred millions of dollars of investor funds to entities and accounts he controlled for his personal benefit as detailed in the chart set forth in Paragraph 23.

46.     Defendants knew or were reckless in not knowing, and should have known, that by raising money from investors that Ruiz intended to misappropriate for his own use that they were engaging in fraudulent and deceptive conduct. Defendants knew or were reckless in not knowing, and should have known, that, based on representations made to RAM investors, Ruiz was not entitled to misappropriate investor funds.

Ruiz Concealed His Misappropriation of Investor Funds By Causing the Dissemination of False Valuations to Investors.

47.     To conceal his fraud, Ruiz, directly or indirectly, provided false valuations to investors reflecting that their investments were increasing in value. Due to Ponzi-like payments and his misappropriation of funds, however, those valuations were false.

48.     Many of the RAM investors wired their investment funds to RAM from accounts they opened (at the Defendants' direction) at a self-directed individual retirement account custodian ("Company A").

49.     As part of its routine operations, Company A provided periodic account statements to those RAM investors showing the purported value of their investments and transactions relating to their ownership interest (*i.e.*, LP Units) in RAM.

50.     During the Relevant Period, Ruiz sent quarterly spreadsheets to Company A containing a false "Current Value (For [Company A] Use)" of each investor's ownership interest in RAM.

51.     The valuation spreadsheets Ruiz sent to Company A did not include the valuation of any assets held by RAM, cite any source (*e.g.*, appraisals), or provide any support for the figures contained therein.

52.     Company A, in turn, included the valuations Ruiz provided in its periodic account statements reflecting that the investors' investments in RAM were generally increasing in value.

53.     RAM did not acquire real estate or make commercial loans, nor did RAM possess any other significant assets.

12

54.     Ruiz knew or was reckless in not knowing, and should have known, that Company A would disseminate the false valuations to the RAM investors in Company A's periodic account statements.

55.     In addition, Ruiz, through CBWM, provided a portfolio report to at least one client that invested in RAM ("Investor A") reflecting a current value of their RAM investment, and, upon information and belief, he sent portfolio reports to other clients.

56.     Ruiz was the source of any RAM-related current values contained in the portfolio reports provided to CBWM clients.

57.     For example, on or about July 19, 2019, Ruiz, through CBWM, distributed a portfolio report to Investor A showing that his investment in RAM was worth $201,380. On January 31, 2020, Ruiz, through CBWM, distributed a subsequent portfolio report to Investor A showing that his investment in RAM had a current value of $208,963.

58.     These values of the RAM investment contained in the CBWM portfolio reports provided to Investor A (and, upon information and belief, others) were false and misleading, because they failed to reflect Ruiz's misappropriation of investors' funds and because no offering proceeds were used by RAM to acquire real estate or to make commercial loans, nor did RAM possess any other significant assets.

59.     A reasonable investor would have understood from Company A's periodic account statements and/or CBWM's portfolio reports that their money in RAM had been used for investment purposes, such as the acquisition of real estate and for RAM to make commercial loans, and had not been misused or misappropriated.

13

60.     Ruiz's provision of the false valuation information for Company A's periodic account statements and CBWM's portfolio reports served to conceal his misappropriation of RAM investor funds, and would have been important to a reasonable investor's decision whether to invest more money or withdraw some or all of their investment.

## VI.     The LP Units in RAM are Securities.

61.     The LP Units RAM offered and sold to investors, through Ruiz and CBWM, are securities as defined in Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" to include, among other things, "investment contracts." An investment contract exists where a person invests his or her money, in a common enterprise, and is led to expect profits solely from the efforts of the promoter or a third party.

62.     The RAM LP Units are investment contracts.

63.     Investors acquired the LP Units in RAM by providing money to RAM.

64.     The investments were part of a common enterprise as the funds the RAM investors provided to RAM were pooled together in RAM's bank accounts.

65.     The RAM LP Unit investors were passive and played no role in the management of RAM. Ruiz, the sole general partner of RAM, exercised all management authority over RAM. As such, the RAM investors expected profits to be derived solely from the efforts of others, namely Ruiz.

66.     CBWM's Supervisory Manual acknowledges that "all kinds of limited partnerships" are a "covered security" for the purposes of its own Code of Ethics.

## VII.   Ruiz and CBWM Breached Their Fiduciary Duty to Their Advisory Clients.

67.     Ruiz and CBWM are both investment advisers within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)]. CBWM is in the business of providing investment advice concerning securities for compensation, and, according to its Form ADV filed as of March 30, 2021, had approximately $61.6 million of client assets under management.

68.     CBWM is registered as an investment adviser in New Mexico and Texas, and advised many, if not all, of the RAM investors about investing in securities for compensation in the form of management fees.

69.     Ruiz is the president, and sole control person and owner of CBWM, and served as an investment adviser representative to many of CBWM's clients. He is also registered as an investment adviser representative in New Mexico and Texas, and thus he is in the business of providing investment advice to CBWM's clients about securities and received compensation through CBWM for such work.

70.     As investment advisers, Ruiz and CBWM are fiduciaries for their advisory clients. As such, each owes its advisory clients an affirmative duty of utmost good faith, is obligated to provide full and fair disclosure of all material facts, has an affirmative obligation to employ reasonable care to avoid misleading their clients, and has a duty to act in their clients' best interests.

71.     As alleged herein, Ruiz and CBWM defrauded their advisory clients by, among other things, misappropriating CBWM client funds, making Ponzi-like payments to investors, and making material misstatements and omissions regarding RAM's use of funds.

72.     In addition,  Ruiz and CBWM defrauded their advisory clients through Ruiz's direct or indirect  dissemination  of false valuations  showing  RAM investments had appreciated in value. These false valuations  deceived investors  into remaining  advisory clients of CBWM and continuing  to pay CBWM advisory fees.

73.     In the alternative,  Ruiz aided and abetted CBWM's violations  of the Advisers Act by knowingly  or recklessly providing  substantial assistance to CBWM. As described further above, Ruiz substantially  participated in these violations  by, among other things, controlling CBWM and orchestrating the fraud, making  false statements to investors,  misappropriating investors' funds, and providing  false valuations  to Company A.

## VIII.   Ruiz is Liable as a Control Person of RAM and CBWM.

74.     Ruiz had sole control  over RAM and CBWM during  the time period  relevant to this Complaint.

75.     Ruiz, as the sole general partner of RAM and president and sole owner of CBWM, exercised control  over the management, general operations,  and polices  of RAM and CBWM, as well as the specific  activities  upon which their violations  are based.

## IX.     Relief Defendants RMF, ISG, and Mister Farms Received Ill-Gotten Gains.

76.     Defendant Ruiz solely  owns and controls each of the Relief Defendants.

77.     Ruiz caused RAM, directly  or indirectly,  to transfer investor funds to RMF, ISG, and Mister Farms.

78.     RMF, ISG, and Mister Farms have each provided  no recognizable  consideration to RAM, such as services or otherwise,  in connection  with their receipt of those investor  funds, nor do they have any documented lending  arrangements with RAM.

79.     As shown in the chart set forth in Paragraph 23, during the Relevant Period, RMF received approximately $8.9 million in deposits into its bank account from RAM. RMF has no legitimate claim to the investor funds deposited into its bank account from RAM.

80.     As shown in the chart set forth in Paragraph 23, during the Relevant Period, ISG received approximately $7.1 million in deposits into its bank account from RAM (via RMF). ISG has no legitimate claim to the investor funds deposited into its bank account from RAM (via RMF).

81.     As shown in the chart set forth in Paragraph 23, during the Relevant Period, Mister Farms received approximately $1.3 million in deposits into its bank account directly and indirectly from RAM. Mister Farms has no legitimate claim to the investor funds deposited into its bank accounts directly or indirectly from RAM.

82.     The investor funds Ruiz caused to be deposited into the RMF, ISG, and Mister Farms bank accounts that are referenced above include proceeds from the fraud by the Defendants as alleged herein.

### FIRST CLAIM FOR RELIEF
**Fraud: Section 10(b) of the Exchange Act and Rule 10b-5**
(All Defendants)

83.     The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

84.     Defendants Ruiz, RAM and CBWM, directly or indirectly, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security, (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact

17

or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon another person.

85.     By virtue of the foregoing, Ruiz, RAM, and CBWM, directly or indirectly, violated and, unless restrained and enjoined, will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## SECOND CLAIM FOR RELIEF
### Control Person Liability under Section 20(a) of the Exchange Act
### For Violations of Section 10(b) of the Exchange Act and Rule 10b-5
(Alternatively, Against Ruiz)

86.     The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

87.     Defendants RAM and CBWM violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

88.     During the Relevant Period, Ruiz, as sole general partner of RAM, and president and sole owner of CBWM, exercised control over the management, general operations, and polices of RAM and CBWM, as well as the specific activities upon which their violations are based.

89.     By reason of the foregoing, Ruiz is liable as a control person under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)] for RAM's and CBWM's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM FOR RELIEF
**Fraud:  Section 17(a)(2) of the Securities Act**
(Ruiz and RAM)

90.     The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

91.     Defendants Ruiz and RAM, directly or indirectly,  in the offer or sale of securities, by use of the means or instruments of transportation or communication  in interstate commerce or by use of the mails, acting with the requisite state of mind, obtained money or property by means of an untrue statement of material fact or omission  to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

92.     By virtue of the foregoing, Ruiz and RAM, directly or indirectly,  violated and, unless restrained and enjoined, will again violate Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

### FOURTH CLAIM FOR RELIEF
**Fraud:  Section 17(a)(1) and (3) of the Securities Act**
(All Defendants)

93.     The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

94.     Defendants Ruiz, RAM and CBWM, directly or indirectly,  in the offer or sale of securities, by use of the means or instruments of transportation or communication  in interstate commerce or by use of the mails, acting with the requisite state of mind, employed a device, scheme, or artifice to defraud and engaged in transactions, practices, or a course of business which operated or would operate as a fraud or deceit upon purchasers.

95.     By virtue of the foregoing, Ruiz, RAM, and CBWM, directly or indirectly, violated and, unless restrained and enjoined, will again violate Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)].

### FIFTH CLAIM FOR RELIEF
**Fraud: Sections 206(1) and 206(2) of the Advisers Act**
(Ruiz and CBWM)

96.     The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

97.     Defendants Ruiz and CBWM are investment advisers as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

98.     Defendants Ruiz and CBWM, while acting as investment adviser, directly or indirectly, by use of the mails or means and instrumentalities of interstate commerce, acting with the requisite state of mind: (a) employed or are employing devices, schemes or artifices to defraud clients or prospective clients; and (b) engaged in or are engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon clients or prospective clients.

99.     By engaging in the conduct described above, Ruiz and CBWM violated, and unless restrained and enjoined, will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## SIXTH CLAIM FOR RELIEF
### Aiding and Abetting Violations of
### Sections 206(1) and 206(2) of the Advisers Act
(Alternatively, Against Ruiz)

100.    The SEC realleges and incorporates by reference above paragraphs 1 through 82 as though fully set forth herein.

101.    Defendant CBWM violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) & (2)].

102.    As a result of the conduct alleged herein, Defendant Ruiz aided and abetted Defendant CBWM's violations of the Advisers Act by knowingly or recklessly providing substantial assistance to CBWM in furtherance of those violations.

103.    By virtue of the foregoing, Ruiz, directly or indirectly, aided and abetted and, unless enjoined, will again aid and abet violations of Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) & (2)].

## SEVENTH CLAIM FOR RELIEF
### Disgorgement from Relief Defendants – Pursuant to Section 6501 of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283 and Equitable Principles
(Relief Defendants RMF, ISG, and Mister Farms)

104.    The SEC realleges and incorporates by reference paragraphs 1 through 82, as though fully set forth herein.

105.    Relief Defendants RMF, ISG, and Mister Farms each obtained money, property and assets which are the proceeds, or are traceable to the proceeds, of the violations of the securities laws by Defendants Ruiz, RAM, and CBWM.

106.    Relief Defendants RMF, ISG, and Mister Farms received these funds under circumstances in which it is not just, equitable, or conscionable for them to retain the funds or assets, and therefore they each have been unjustly enriched.

## RELIEF SOUGHT

**WHEREFORE**, the SEC respectfully requests that this Court:

### I.

Find that Defendants Ruiz, RAM, and CBWM violated the securities laws and rules promulgated thereunder as alleged against them herein;

### II.

Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining the Defendants Ruiz, RAM, and CBWM from violating the laws and rules alleged against them in this Complaint;

### III.

Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendant Ruiz from: (1) directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Ruiz from purchasing or selling securities for his own personal account; (2) directly or indirectly, exercising any discretionary authority granted to him, or to any entity owned or controlled by him (including, but not limited to, CBWM), with respect to any account in the name of any person or entity other than himself; and (3) directly or indirectly, including, but not limited to, through any entity owned or controlled by him, causing any assets or funds in any

account in the name of any person or entity other than himself to be withdrawn, transferred, pledged, or encumbered;

## IV.

Order Defendants Ruiz, RAM, and CBWM, jointly and severally, and Relief Defendants RMF, ISG, and Mister Farms, to disgorge all of the ill-gotten gains from the violations alleged in this Complaint, and order them to pay prejudgment interest thereon;

## V.

Order Defendants Ruiz, RAM, and CBWM to pay third-tier civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

## VI.

Grant such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

The SEC demands a trial by jury on all claims so triable.

Dated: July 29, 2021

Gregory A. Kasper
Stephen C. McKenna (*pro hac vice application forthcoming*)
Kenneth E. Stalzer (*pro hac vice application forthcoming*)
Attorneys for Plaintiff
UNITED STATES SECURITIES AND
EXCHANGE COMMISSION